### H. K. WOLFE v. THE SOUTHERN RAILWAY COMPANY.

#### (Filed 23 May, 1917.)

**Master and Servant—Employer and Employee—Negligence—Evidence—Nonsuit—Trials.**

Where in an action for damages against a railroad company for a personal injury the negligence alleged is the failure of the defendant to provide a proper ladder upon which the plaintiff was obliged, in the course of his employment, to go to the top of a water tank, and the plaintiff's evidence tends to show that the ladder had two defective rounds, and the injury was received by his catching hold of an iron pipe at the side of the ladder, which he knew was weak, and for an entirely different purpose; and without evidence as to his position on the ladder at the time or his nearness to the defective rounds: *Held,* upon the evidence the proximate cause of the injury was his catching hold of the weak pipe, and not the defective rounds of the ladder, and the defendant's motion to nonsuit was properly allowed.

CIVIL ACTION, tried March Term, 1916, of YADKIN, before *Shaw, J.*

At conclusion of the evidence a motion to nonsuit was sustained, and plaintiff appealed.

*Holton & Holton, Benbow & Haynes for plaintiff.*
*Manly, Hendren & Womble for defendant.*

BROWN, J.　The plaintiff sues to recover damages for a personal injury caused by falling from a water-tank ladder.　The defendant introduced no evidence and the case turns upon plaintiff's own evidence.

From this it appears plaintiff had charge of defendant's pumping station at Elkin. The water-tank was set on a platform several feet from the ground and a ladder extended from this platform up to the top of the tank.　The ladder was made of oak timber.　The sides, or upright pieces, rested on the platform at the bottom and were fastened to the top of the tank.　The ladder stood out several inches from the tank.　The rungs were of oak 2 inches in diameter at their centers and tapered off to a smaller size at the point where they entered the upright pieces. About 8 or 10 inches on either side of the ladder was a 1 inch iron pipe 10 or 12 feet long, which acted as guides for the weights which controlled the movement of the waterspout. These rods were not substantial and were intended for no other purpose than to act as guides for the weights.　They were held in place by being let into small sockets in scantlings at the top and at the bottom.　They did not extend through the scantlings, and were not bolted at either end.　One of the rungs in the ladder had a streak of sap on top that had rotted.　Another rung was described by the plaintiff as being hard-twisted and cracked.　Since the plaintiff had held the position of pumper he had gone up this ladder on an average of twice a week, in the night-time as well as in the daytime.　On the morning of the accident, while going up the ladder, he caught hold of one of the iron pipes beside the ladder and put some weight on it, which caused it to give way, and he was thrown off the ladder. The plaintiff had full knowledge of the condition of the ladder, and he knew the only purpose of the iron pipes was to guide the weights attached to the waterspout and to keep them from swinging from side to side as they moved up or down, and that they were not intended to climb on or to bear much weight.

We will not discuss the doctrine of assumption of risk as applicable to these facts, as in our opinion the duty to exercise reasonable care in furnishing a safe tank ladder for plaintiff's use was a primary, absolute, nondelegable duty, and plaintiff could only be held to have assumed the risk where the danger was obvious and such that a reasonably prudent man would not have taken the risk.　We prefer to rest our decision upon another ground.

The alleged negligence of the defendant was not the proximate cause of plaintiff's injury.　He testified; "This laader had two defective rounds, and I stopped on the rounds and reached up to next round with my left hand and reached out with my right hand and took hold of the rod and did not put a quarter of my weight on it, and it slipped through the bottom and bent over.　It slipped through because the scantling it

rested on was rotten." Plaintiff further testified: "When the spout came down, the weights went up, guided by these two rods. That was the only purpose these rods were intended for, to guide the two weights— simply to keep the weights from swinging from side to side as they came down or went up. I knew that was what they were for. The pulleys were right at the top of these two rods on each side. I had held to the sides of the ladder, and had held to the pipes before this. The rounds all the way up were solid. I could reach up and swing my foot over the bad rounds. I may have done this time and time again as I went up. I don't remember distinctly about this. I have never fallen before this time. I was always a little watchful; I had always tried to take care of myself. I knew the rods were not intended to climb on."

Again he says: "At the time I fell the round did not break with me. It was the iron rod that pushed down and pulled out. I don't remember what position in the ladder that round with the sap-rotten place on it was. I do not know where the one that had the crack in it was. I do not know which one I had my foot on. It was the pulling loose of the iron rod that caused me to fall."

The plaintiff does not pretend that the defective rungs had given way or were about to give way under his weight and that he grasped the iron pipe in a spasmodic effort to save himself from falling. He states quite the contrary. He admits that instead of ascending the ladder in the usual and proper way, by holding on the strong oaken sides or uprights, he reached out with one hand and grasped the iron pipe and put a part of his weight upon it. This caused his fall. The rung upon which he was standing did not give way, and he does not say that he felt it giving way. There were only two rungs claimed to be defective, one near the bottom of the ladder and one nearer the top; one had "a streak of sap on it" and the other was "hard and cracked." That they were insufficient to hold plaintiff does not appear. Which rung was near the bottom and upon which he was standing when he reached over for the iron pipe he does not say. He does not even say that he was standing on either one of the defective rungs. It is certain, however, that the rung did not break or start to break or cause plaintiff to fall. This was caused because he attempted to use an instrumentality that was not provided by the defendant for the purpose for which it was being used by him, and the purpose of which he knew full well. He admits that he could easily reach up and swing his foot over the bad rounds and that he may have done this time and again as he ascended the ladder.

Had the plaintiff ascended the ladder in the usual and proper manner and grasped its strong oaken uprights instead of the weak and unstable pipe, not intended for such purpose, it is more than probable he would not have been injured even had the rung broke.

We do not think the case of *Coley v. R. R.*, 128 N. C., 534, is authority for plaintiff's contention. In that case the defects were admitted, viz., that the engine furnished for switching was unsuited for its work and the grabirons or handholds were off and the engineer had to use the drainpipes from the top of the tender (never intended to be used as handholds), and they gave way. The difference betwen that case and the one at bar is very manifest.

The judgment of nonsuit is
Affirmed.